## SEWARD PROSSER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 8520.    Promulgated July 26, 1927.

> The petitioner was a trustee in connection with the reorganization of a corporation. Upon the completion of his duties he was offered $10,000 for compensation, but refused to receive the same for himself until certain notes held by the Bankers Trust Co. of New York City should have been paid off. The money was placed in escrow with the Bankers Trust Co. as escrow depositary and was to be held as security for the payment of those notes until the same were paid. The money and the income therefrom was not received by the petitioner during the years 1923, 1924, or 1925. *Held*, that the petitioner derived no income from the $10,000 in 1923.

*Henry Mannix, Esq.*, for the petitioner.
*D. D. Shepard, Esq.*, for the respondent.

This is a proceeding for the redetermination of a deficiency in income tax for the year 1923 in the amount of $4,275 arising from the addition to the petitioner's reported net income of $10,000 alleged to have been received by him as an honorarium for services performed as trustee in connection with the reorganization of a corporation.

### FINDINGS OF FACT.

The petitioner is an officer of the Bankers Trust Co. of New York City, and in 1923 was chairman of its board of directors. Mills & Gibb, Inc., a New Jersey corporation, became insolvent in May, 1916. Two new corporations were organized for the purpose of taking over the business and assets of the insolvent corporation and accomplishing the ultimate repayment of creditors. One of these corporations was an operating company and the other a holding company, which held all the stock of the operating company. The stock of the holding company was placed in a voting trust dated November

27, 1916. The petitioner was appointed one of the three original voting trustees under this agreement and performed duties in that capacity from the time of his appointment until the termination of the voting trust in 1923.

For the purpose of obtaining funds to pay off the notes of the holding company, a new corporation, Mills-Fogarty Corporation, was organized in 1923. This corporation sold for cash $475,000 of its Class A 6 per cent notes, $375,000 of which were purchased by a group of banks in New York City, the participation therein by the Bankers Trust Co. being $225,000. The petitioner was largely responsible for these reorganization plans and was instrumental in having the Bankers Trust Co. and other banks purchase the $475,000 of notes.

Upon the completion of the reorganization of the business the voting trustees had no further functions to perform. The voting trust agreement contained no provision for compensation to the voting trustees and they had no legal claim against the corporation for compensation, but the corporation was desirous of making some payment to the petitioner as an honorarium in appreciation and recognition of the services rendered by him to the corporation and, therefore, proposed to pay the petitioner and each of the other voting trustees the sum of $10,000. On account of his fiduciary relationship towards the Bankers Trust Co. the petitioner felt he could not with propriety accept any honorarium from the holding company until the $375,000 Class A notes of its Mills-Fogarty Corporation, held by the Bankers Trust Co. and the other banks, were fully paid. He so advised the holding company. Thereupon, that company at the suggestion of the petitioner paid $10,000 to the Bankers Trust Co. as escrow depositary to be held by it until payment was made in full of the $375,000 of notes in question. The check dated May 31, 1923, was made payable to the order of "Bankers Trust Company—Escrow Depositary," and was signed by Seward Prosser, President, and H. H. Martin, Treasurer. On the same date, May 31, 1923, the petitioner, as an officer of the corporation, addressed a letter to the Bankers Trust Co., reading as follows:

MAY 31, 1923.

BANKERS TRUST COMPANY,
  *16 Wall Street, New York, N. Y.*

GENTLEMEN: For my services as a Trustee of M. & G. Properties Company, Inc., appointed under the agreement dated November 27, 1916, in connection with the reorganization of Mills & Gibb, there has been paid to me the sum of $10,000. I am unwilling to accept and retain for my own account this compensation, although advised I could properly do so, unless and until the full amount of the notes of the Mills-Fogarty Corporation, endorsed by George R. Fogarty, known as Class A 6% Collateral Gold Notes, now outstanding at this

time and amounting to the sum of $375,000, are fully paid. I therefore hand you herewith the sum of $10,000, which I ask you to hold in escrow as follows:

1. You will hold this amount on deposit or invest it as I may direct.

2. You will continue to hold for deposit or such investment as you may make, until such time as the holders thereof shall receive payment in full of the said notes of the Mills-Fogarty Corporation endorsed by George R. Fogarty as additional collateral security for the payment of said notes. In the event that the holders do not receive payment of said notes in full, you will use said deposit or the proceeds of the investment toward making up any difference which may exist.

3. If, however, notice is received by you that funds have been provided for the payment of the notes in full, you will return the said deposit or the securities in which the sum may have been invested, together with accrued interest thereon to me. I have filed a copy of this letter with the Bankers Trust Company as Trustee, requesting that the notices above provided may be given to you.

4. The terms of this letter shall expire on February 10, 1926, at which time the securities or cash shall be returned to me unless I elect at that time to extend the period over which these instructions are to run.

Very truly yours,

(Signed)     SEWARD PROSSER.

At the bottom of the letter was an acceptance by the Bankers Trust Co. of the terms of the above letter, signed by B. W. Jones, vice president.

Up to the middle of 1926, the notes had not been fully paid and the Bankers Trust Co. as escrow depositary still retained the $10,000 and the proceeds therefrom. The petitioner has never received for his own use any part of the said sum of $10,000, nor interest thereon, as compensation, nor has he enjoyed any benefits from the use thereof, nor has said sum ever been subject to the petitioner's demand.

The petitioner reported his income for 1923 upon a cash receipts and disbursements basis.

### OPINION.

SMITH: Whether the item in controversy was intended as compensation for services performed or was intended as a gift is not material. In any event it did not constitute taxable income to the petitioner unless and until received by him.

We have found as a fact that the petitioner did not, during the year 1923, actually receive or hold any legal claim for any part of the amount or proceeds thereof. The respondent seeks as an alternative to invoke the doctrine of constructive receipt. No deposit of the sum in question was ever made to the credit of the petitioner at any place. There was a tender of the amount by the M. & G. Properties Co., Inc., which the petitioner for reasons of propriety and within his rights refused to accept. The petitioner thereupon

made a proposal to the M. & G. Properties Co., Inc., which it accepted, that the sum tendered be paid over to a third party, to whom the petitioner was under no legal obligation, to be held for payment to the petitioner upon the happening of an uncertain future event. No ownership, control, or use and enjoyment of the sum was ever exercised by the petitioner. It was held by the escrow depositary subject to conditions that might have prevented the petitioner from ever receiving any part of it. The escrow agreement specifically stated that the petitioner was unwilling to and would not receive the money until the notes held by the Bankers Trust Company had been fully paid. There may be, as the respondent contends, some doubt as to the enforceability at law of the terms of the escrow agreement, but the question is not material. So far as is shown the terms of the agreement have been at all times carried out. Up to the middle of the year 1926, at which time the Bankers Trust Co. still held the principal and all the proceeds, the petitioner had not, in our opinion, received any income in respect of such amount. The deficiency resulted entirely from the addition to net income of the $10,000 in question.

Reviewed by the Board.

*Judgment of no deficiency will be entered for the petitioner.*